UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| ENERCORP ENGINEERED SOLUTIONS, LLC AND ENERCORP ENGINEERED SOLUTIONS, INC. *Plaintiffs,* | § § § § § | |
| v. | § § | CASE NO. 7:25-cv-00448 |
| TRILOGY, LLC, *Defendant.* | § § § | |

## INTRODUCTION

1. Plaintiffs EnerCorp Engineered Solutions, LLC ("EnerCorp LLC") and EnerCorp Engineered Solutions, Inc. ("EnerCorp Inc.") (collectively, "EnerCorp" or "Plaintiffs") file this Complaint for patent infringement against Trilogy, LLC ("Trilogy" or "Defendant"), and in support thereof, allege as follows:

## PARTIES

2. Plaintiff EnerCorp Engineered Solutions, Inc. is a Canadian corporation organized under the laws of the province of Alberta, Canada with an office located 715 5th Ave. SW, Suite 3200, Calgary, Alberta T2P2X6.

3. Plaintiff EnerCorp Engineered Solutions, LLC is a limited liability company organized under the laws of the Delaware with its headquarters at 25700 I-45 North, Suite 450, The Woodlands, Texas 77385.

4. Defendant Trilogy LLC is a limited liability company organized under the laws of North Dakota. Trilogy maintains a regular and established place of business within this District at 10101 W County Rd. 148, Odessa, Texas 79766. Trilogy may be served with process by serving its registered agent at Oxner Legha, PLLC, 16060 Dillard Dr., Suite 100, Jersey Village, Texas 77040.

**JURISDICTION AND VENUE**

5. This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, including 35 U.S.C. § 1 et seq.

7. This Court may properly exercise personal jurisdiction over Trilogy because Trilogy is registered to do business in Texas, maintains a registered address in this state and actively engages in continuous and systematic business in Texas. Trilogy's business includes transactions for the sale of goods and services which Plaintiff asserts infringe the patents-in-suit, with such infringement occurring in Texas and more specifically, in this District. Venue is also proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 1400 § (b). Defendant maintains a regular and established place of business within this District, actively and regularly conducts business within Texas and within this District. Further, venue here is proper as Defendant's infringing activities are occurring within Texas and more particularly in this District and Defendant is inducing the infringement of others located in this District. Defendant makes, uses, sells, and offers for sale its infringing Sand Titan sand separator device and services in Texas and in this District.

**FACTS**

**A.   EnerCorp Engineered Solutions' Proprietary Sand Separators**

8. EnerCorp is a recognized and respected leader in the oil and gas industry and in particular, for its products and services used during the flowback and production phases of an oil and gas well. EnerCorp has developed products and services to provide its customers with highly effective sand management solutions during these phases and has focused much of its efforts on solving problems experienced by owners and operators in Midland, Texas and the Permian Basin,

where it has established a reputation and record of success. To maintain its position at the forefront of this industry, EnerCorp LLC maintains an office and service center in Midland, Texas. EnerCorp has a proven history of innovation in this area including innovation in the design, manufacture, and installation of sand management products including sand separators. EnerCorp has developed its Sahara family of cyclonic sand separators which enable its customers to maximize their flowback and production through effective sand separation and sand management.

9. EnerCorp's innovations have been recognized by the United States Patent and Trademark Office through the issuance of multiple patents related to the oil and gas industry. These issued patents include U.S. Patent No. 11,839,883 ("the '883 Patent") and U.S. Patent No. 12,145,160 ("the '160 Patent") relating to a Modular Cyclone invention.

B. **EnerCorp's Patents-in-Suit**

10. The '883 Patent, entitled "MODULAR CYCLONE," was duly and legally issued on December 12, 2023, to EnerCorp Engineered Solutions, Inc. A true and correct copy of the '883 Patent is attached hereto and incorporated by reference as Exhibit A.

11. The '160 Patent, entitled "MODULAR CYCLONE," was duly and legally issued on November 19, 2024, to EnerCorp Engineered Solutions, Inc. A true and correct copy of the '160 Patent is attached hereto and incorporated by reference as Exhibit B.

12. EnerCorp LLC is the exclusive licensee and holder of all substantial rights, title and interest in EnerCorp Engineered Solutions, Inc.'s U.S. patents including the '883 Patent and the '160 Patent in the United States, with full rights to enforce these patents. EnerCorp makes, distributes, offers to sell, and sells modular cyclone separator systems that practice the '883 Patent and '160 Patent. EnerCorp has marked the covered products sold and used in the United States in accordance with 35 U.S.C. § 287.

**C.    Ryan Thomas Bowley – EnerCorp's Former Chief Development Engineer Assigned All Rights to EnerCorp and Agreed to Protect Its Confidential Information**

13.     Ryan Bowley was the Chief Development Engineer for EnerCorp Engineered Solutions, Inc. until February 10, 2022. Mr. Bowley began working for EnerCorp's predecessor on or about April 2017.  He was responsible for improving upon EnerCorp's existing technologies and developing new technology as he was exposed to EnerCorp's technology and confidential information.  When Mr. Bowley was originally hired in 2017, he signed a Confidentiality and Post-Employment Obligations Agreement.  In that agreement, Mr. Bowley acknowledged that "all ownership and other rights in all works, programs, know-how, techniques, formulas, data, manuals, methods, inventions, ideas, designs, improvements, discoveries, processes and other works of authorship ("Inventions") which [he] develops, conceives, or reduces to practice, along or with others, during the term of [his] employment with the Corporation, shall be the exclusive property of the Corporation."  In the agreement Mr. Bowley agreed to assign and did assign and convey all rights he had in any such Inventions to the company.

14.     Mr. Bowley is the inventor of the '883 Patent and the '160 Patent.  On September 26, 2018, Mr. Bowley assigned all of his rights to the invention identified as the Modular Cyclone and broadly described in the patent application filed with the United States Patent and Trademark Office under serial number 62/690,061.  The assignment included Mr. Bowley's "entire right, title, and interest in and to the above-referenced invention and the above-referenced applications, and all divisions, and continuations thereof, and all Letters Patent of the United States of America that might be granted thereon, and all reissues thereof, and all rights to claim priority on the basis of such applications, and all extensions, renewals, and reissues thereof...".

15.     In addition to the assignment of rights, Mr. Bowley also covenanted that "I have the full right to convey the interest assigned by this Assignment, and I have not executed and will not execute any agreement in conflict with this assignment".

16. Mr. Bowley further covenanted that "I will, without further consideration, communicate with Assignee, its successors and assigns, any facts known to me respecting this invention, and testify in any legal proceeding, sign all lawful papers when called upon to do so, execute and deliver any and all papers that might be necessary or desirable to perfect the title to this invention in Assignee, its successors and assigns, execute all divisional, continuation and reissue applications, make all rightful oaths, and generally do everything possible to aid Assignee, its successors and assigns, to obtain and enforce proper patent protection for this invention in the United States of America...". A true and correct copy of this Assignment, recorded with the United States Patent and Trademark Office at Reel:065715 Frame: 0962-0964, is attached hereto as Exhibit C. Further, a true and correct copy of the notice of name change from EnerCorp Sand Solutions Inc. to EnerCorp Engineered Solutions Inc. recorded with the USPTO at Reel:066831 Frame:0689-0695, is attached hereto as Exhibit D.

17. Mr. Bowley also assigned all of his rights in other inventions and patent applications relating to sand separators to EnerCorp. For example, on or about September 27, 2021, Mr. Bowley executed an assignment of all rights to the invention relating to an Adjustable Inlet Assembly for Sand Separator along with the United States patent applications that were filed on the invention. As in the other assignments, Mr. Bowley covenanted to cooperate with EnerCorp to ensure that it received all of the rights to the invention and Mr. Bowley's cooperation. A true and correct copy of this assignment is attached as Exhibit E.

18. On or about February 10, 2022, Mr. Bowley's employment was terminated with EnerCorp Sand Solutions Inc. Thereafter, Mr. Bowley signed an agreement in which he recognized and acknowledged his prior access to EnerCorp's confidential and proprietary information and that disclosure could be harmful to EnerCorp's interests. Mr. Bowley agreed that in the future that he would take appropriate precautions to safeguard the confidential information of EnerCorp and not use or disclose it.

19. On or about June 16, 2025, Lars Wikstrom, CEO of Trilogy, published an article titled "From Classic Cyclone Theory to Oilfield Reality - the Road to 99% efficiency". In that article, Mr. Wikstrom discusses the obstacles Trilogy faced in the industry trying to build a sand separator. Mr. Wikstrom described how Trilogy eventually stopped trying to sell 99.9% efficiency and "started owning the truth". Trilogy decided that they "weren't going to promise numbers that we couldn't back up not to ourselves, and definitely not to our customers". Mr. Wikstrom discusses Trilogy's unsuccessful efforts to bring to market a sand separator that met their stated requirements. In the article, Mr. Wikstrom, however, credits a single engineer with designing Trilogy's Sand Titan sand separator, claiming "[h]e came up with the dual internal helical flow conditioner". Mr. Wikstrom does not name the engineer in the article.

20. On or about September 2025, a technical article titled "Adaptive three-speed flow conditioning for multiphase cyclonic sand separation: Design, rationale and early field results" was published in World Oil magazine. The article is co-authored by Ryan Bowley and Lars Wikstrom. Mr. Wikstrom and Mr. Bowley previously worked together at EnerCorp. Mr. Wikstrom was a general manager and had knowledge of EnerCorp's agreements and procedures. Ryan Bowley is identified as Trilogy's senior technical advisor. The article describes in detail the design, development, and field testing of Trilogy's Sand Titan separator system.

21. In the World Oil article, Ryan Bowley is identified in his author biography as "the original inventor of the three-speed helical flow conditioner" and as having "led its commercial development from conceptualization through to field deployment." The biography further states that "Ryan has contributed to the design and development of some of the most widely used high-efficiency cyclonic separators in upstream oil and gas." The article claims that the "work draws on physical observations, engineering analysis and field results from early 2025 deployments conducted" in basins including the Permian Basin.

22. The article describes designs and concepts that Mr. Bowley worked on and developed while employed by EnerCorp. For example, in the article Mr. Bowley emphasizes the use of helical flow geometry at the inlet to optimize cyclonic separation. He explains that "[t]he flow enters the insert and is rerouted into the cyclone chamber in a hydrodynamically controlled helical manner…". Mr. Bowley emphasizes the need to adjust for the velocity of the fluid and asserts that "[h]elical entries are the best design hydrodynamically and introduce the flow into the cyclone where the least turbulence is created and where the flow is traveling in a downward helix from its entry point."

23. These concepts are disclosed in the '883 Patent and the '160 Patent specifications and support the claimed inventions in those patents. For example, the patents describe "a cyclone starter insert" that "may be positioned at least partially within the cyclone body and proximate to and/or axially-aligned with the inlet." The patents explain that "[t]he cyclone starter insert may have an aerodynamic surface that directs the mixed fluid stream to begin its helical flow path in the cyclone and avoid or mitigate turbulent flow. In at least one embodiment, the cyclone starter insert may be or include spiral surface."

24. On information and belief--based on Mr. Bowley's role as Chief Development Engineer at EnerCorp, his work on the helical inlet flow concepts reflected in the '883 and '160 Patents, his work on other EnerCorp innovations and developments, his assignment of all rights to such inventions to EnerCorp, and his identification as "the original inventor" of Trilogy's Sand Titan product--Mr. Bowley developed Trilogy's Sand Titan helical inlet system by utilizing and building upon the Inventions and confidential information he developed and to which he was exposed during his employment at EnerCorp, all of which he had assigned to EnerCorp.

25. Trilogy has knowingly benefited from and continues to benefit from Mr. Bowley's breach of his obligations to EnerCorp. by commercializing technology derived from his work at

EnerCorp. and did so despite Mr. Bowley's assignment of all rights to Inventions, his covenant not to disclose confidential information, and other contractual obligations to EnerCorp,

### D. Trilogy Infringes EnerCorp's Patents and Commercializes EnerCorp's Technology Through Bowley

26. Trilogy is a direct competitor of EnerCorp in the United States and in particular, in Midland, Texas and the Permian Basin. Trilogy asserts that it is a full-service provider for sand and facilities management, flowback, drill out and frac support. Trilogy's flagship product for sand management and sand separation is called the "Sand Titan". Trilogy makes, sells, offers for sale, uses, and operates its Sand Titan devices in the United States and in particular in Midland, Texas and the broader Permian Basin. Trilogy promotes and advertises the Sand Titan through various channels, including its sales team, website, LinkedIn.Com Trilogy account, and a publicly available YouTube channel including a video entitled "How the Sand Titan Works The Ultimate Sand Separator" (https://www.youtube.com/watch?v=znSSmrzNUc8). According to Trilogy, this video and the descriptions and brochures on its website, demonstrate the structure and operation of the Sand Titan device. Trilogy provides additional descriptions of the features and operation of the Sand Titan at its website, https://trilogy.us.com/services/sand-titan/ (last accessed October 1, 2025, which remains accessible as of the filing of this complaint.

27. The Sand Titan infringes one or more claims of the '883 Patent, including at least Claim 1, either literally or under the doctrine of equivalents, as set forth below.

28. Claim 1 of the '883 Patent is as follows:

Claim 1. A cyclone sand separator kit, comprising:

> a cyclone body having an inlet, a fluid outlet, and a solids outlet, the inlet being configured to receive a mixed fluid including a solid portion and a fluidic portion, the solids outlet being configured to receive the solid portion separated from the fluidic portion, and the fluid outlet being configured to receive the fluidic portion separated from the solids portion; and

a plurality of cyclone inserts configured to be positioned in the cyclone body, at least partially between the inlet and the solids outlet and at least partially between the fluids outlet and the solids outlet, wherein the cyclone inserts each define a vortical section configured to induce inertial separation of the mixed fluid, and wherein the cyclone inserts include different geometries including different inner diameters, different lengths for respective cylindrical sections thereof, different angles for respective conical sections thereof, different underflow outlet sizes, different vortex finder placements, or a combination thereof; and

a plurality of inlet inserts having different geometries, wherein the inlet inserts are each configured to be positioned at least partially in the inlet, wherein the inlet inserts are selectable depending on a well flow condition, wherein the inlet inserts are rigid and configured to be fixed in place at least partially in the inlet, such that the inlet inserts do not move with respect to the inlet, and wherein the inlet inserts each include a flange for removable connection of the inlet inserts into the inlet.

29. The Sand Titan is a cyclone sand separator. As shown in Trilogy's publicly available website and video, the Sand Titan is marketed and sold as a complete cyclone sand separator system for oil and gas operations.

30. The Sand Titan comprises a cyclone body having an inlet, a fluid outlet, and a solids outlet. As demonstrated in Trilogy's video and website, the Sand Titan includes a cyclone body with an inlet configured to receive a mixed fluid containing sand and other fluids from oil and gas operations, a fluid outlet at the top of the device for discharging separated fluids, and a solids outlet at the bottom for discharging separated sand and solid particles. The inlet receives the mixed fluid including solid portions which may include sand and fluidic portions which may include oil, gas and/or water, the solids outlet receives the solid portion separated from the fluidic portion, and the fluid outlet receives the fluidic portion separated from the solids portion. The following image was taken from the Trilogy video and references showing approximate elements in the image were added for illustration purposes.



31. Trilogy provides a plurality of cyclone inserts configured to be positioned in the cyclone body of the Sand Titan with the cyclone insert chosen based upon the desired application. As shown in Trilogy's video, the Sand Titan contains a chosen cyclone insert positioned within the cyclone body, located at least partially between the inlet and the solids outlet and at least partially between the fluid outlet and the solids outlet. The cyclone inserts each define a vortical section that induces inertial separation of the mixed fluid through cyclonic action. Upon information and belief, the Sand Titan's cyclone inserts include different geometries, including at least one of: different inner diameters, different lengths for respective cylindrical sections, different angles for respective conical sections, different underflow outlet sizes, or different vortex finder placements, allowing the device to be configured for different well flow conditions. The following image was taken from the Trilogy video and references showing approximate elements in the image were added for illustration purposes.



32.     The Sand Titan comprises a plurality of inlet inserts having different geometries. As demonstrated in Trilogy's video, the Sand Titan includes inlet inserts that are configured to be positioned at least partially in the inlet. These inlet inserts are selectable depending on well flow conditions, allowing operators to optimize the Sand Titan's performance for specific operating parameters. The inlet inserts are rigid components that are configured to be fixed in place at least partially in the inlet, such that they do not move with respect to the inlet during operation. The inlet inserts each include a flange or similar connection mechanism for removable connection of the inlet inserts into the inlet, allowing for interchange of different inlet insert configurations.



11



33.     As illustrated in the image above and the Trilogy description, multiple inlet inserts for an inlet in the Sand Titan is available for different well flow conditions.

34.     Through its manufacture, use, sale, and offer for sale, and operation of the Sand Titan, Trilogy has directly infringed and continues to directly infringe at least Claim 1 of the '883 Patent.

35.     The Sand Titan also infringes one or more claims of the '160 Patent, including at least Claim 21, either literally or under the doctrine of equivalents, as set forth below.

36.     Claim 21 of the '160 Patent is as follows:

Claim 21. A cyclone sand separator, comprising:

a cyclone body having an inlet, a fluid outlet, and a solids outlet, the inlet being configured to receive a mixed fluid including a solids portion and a fluids portion, the solids outlet being configured to receive the solids portion separated from the fluids portion, and

12

the fluid outlet being configured to receive the fluids portion separated from the solids portion; and

a plurality of inlet inserts having different geometries, wherein the inlet inserts are each configured to be positioned at least partially in the cyclone body in the inlet, wherein the inlet inserts are rigid and unmoving once attached in the cyclone body, such that the inlet inserts do not move with respect to the cyclone body, and wherein the inlet inserts are selectable based at least partially upon a diameter of the inlet insert and a well flow condition.

37. The Sand Titan comprises a cyclone sand separator. As shown in Trilogy's YouTube video and website, the Sand Titan is marketed and operates as a cyclone sand separator for oil and gas operations. See illustrations above.

38. The Sand Titan comprises a cyclone body having an inlet, a fluid outlet, and a solids outlet. As shown in Trilogy's video and website disclosures, the Sand Titan has a cyclone body with an inlet configured to receive a mixed fluid including a solids portion, which may include sand, and a fluids portion, which may include oil, gas, and/or water. The solids outlet at the bottom of the device is configured to receive the solids portion separated from the fluids portion, and the fluid outlet at the top is configured to receive the fluids portion separated from the solids portion. The following image was taken from the Trilogy video and references showing approximate elements in the image were added for illustration purposes.



13

39. The Sand Titan includes a plurality of inlet inserts having different geometries. As demonstrated in Trilogy's video, the Sand Titan has inlet inserts that are each configured to be positioned at least partially in the cyclone body in the inlet. These inlet inserts are rigid components that are unmoving once attached in the cyclone body, such that the inlet inserts do not move with respect to the cyclone body during operation. The inlet inserts are selectable based at least partially upon a diameter of the inlet insert and a well flow condition, allowing operators to optimize the Sand Titan's performance for specific operating parameters and flow rates.



40. As illustrated in the image above and the Trilogy description included above, multiple inlet inserts for an inlet in the Sand Titan is available for different well flow conditions.

41. Through its manufacture, use, sale, and offer for sale, and operation of the Sand Titan, Trilogy has directly infringed and continues to directly infringe at least Claim 21 of the '160 Patent.

42. On information and belief, Trilogy has knowingly, intentionally, and willfully induced, and continues to actively induce operators and well owners in Midland, Texas and the Permian Basin to infringe the '883 Patent and '160 Patent by promoting, advertising, and instructing customers on the use of the Sand Titan in a manner that infringes the patents, with knowledge of EnerCorp's patent rights and the infringing nature of such activities. Trilogy

provides instructional materials, including videos and technical specifications and services, that teach and encourage the use of the Sand Titan in an infringing manner.

43. As a direct and proximate result of Trilogy's willful infringement of the '883 Patent and '160 Patent, EnerCorp has suffered and continues to suffer substantial damages in an amount to be determined at trial.

44. Trilogy's continued infringement of the '883 Patent and '160 Patent has caused and will continue to cause EnerCorp irreparable harm for which there is no adequate remedy at law unless Trilogy is enjoined from further infringement.

## CAUSES OF ACTION
### COUNT I - INFRINGEMENT OF THE '883 PATENT

45. EnerCorp repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if fully stated herein.

46. Collectively EnerCorp holds all substantive rights in and to the '883 Patent, including the sole and exclusive right to prosecute this action and enforce the 883 Patent against infringers, and to collect damages for all relevant times.

47. Defendant has, either alone or in concert with others, directly infringed and continues to infringe the '883 Patent, either literally or through the doctrine of equivalents, by making, using, selling, offering for sale, installing, and/or operating the Trilogy Sand Titan sand separator within the United States, in violation of 35 U.S.C. § 271(a).

48. Defendant has induced and continues to induce infringement of the '883 Patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others, including its customers, operators, and well owners in Midland, Texas and the Permian Basin, to directly infringe one or more claims of the '883 Patent. Trilogy provides instructional videos, technical specifications, operational guidance, and on-site services that operate, instruct and encourage the use of the Sand Titan in an infringing manner. Trilogy has actual knowledge of the '883 Patent at least as of the

filing of this Complaint. Trilogy knows or willfully blinds itself to the fact that its customers' use of the Sand Titan as instructed infringes the '883 Patent, yet continues to promote, market, and provide support for such infringing use with the specific intent that its customers in Midland, Texas and the Permian Basin infringe.

49. On information and belief, Trilogy has made and is continuing to make unlawful gains and profits from its infringement of the '883 Patent.

50. EnerCorp has been damaged and irreparably harmed by Trilogy's willful infringement of the '883 Patent for which EnerCorp is entitled to enhanced damages and relief under 35 U.S.C. § 284. EnerCorp will continue to suffer damages and irreparable harm unless Trilogy is enjoined preliminarily and permanently by this Court from continuing its infringement.

## COUNT II - INFRINGEMENT OF THE '160 PATENT

51. EnerCorp repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if fully stated herein.

52. Collectively EnerCorp holds all substantive rights in and to the '160 Patent, including the sole and exclusive right to prosecute this action and enforce the '160 Patent against infringers, and to collect damages for all relevant times.

53. Defendant has, either alone or in concert, directly infringed and continues to infringe the '160 Patent, either literally or through the doctrine of equivalents, by making, using, selling, offering for sale, installing, and/or operating the Trilogy Sand Titan sand separator within the United States, in violation of 35 U.S.C. § 271(a).

54. Defendant has induced and continues to induce infringement of the '160 Patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others, including its customers, operators, and well owners in Midland, Texas and the Permian Basin, to directly infringe one or more claims of the '160 Patent. Trilogy provides instructional videos, technical specifications, operational guidance, and on-site services that operate, instruct and encourage the use of the Sand

Titan in an infringing manner. Trilogy has actual knowledge of the '160 Patent at least as of the filing of this Complaint. Trilogy knows or willfully blinds itself to the fact that its customers' use of the Sand Titan as instructed infringes the '160 Patent, yet continues to promote, market, and provide support for such infringing use with the specific intent that its customers in Midland, Texas and the Permian Basin infringe the '160 Patent.

55. On information and belief, Trilogy has made and is continuing to make unlawful gains and profits from its infringement of the '160 Patent.

56. EnerCorp has been damaged and irreparably harmed by Trilogy's infringement of the '160 Patent for which EnerCorp is entitled to relief under 35 U.S.C. § 284. EnerCorp will continue to suffer damages and irreparable harm unless Trilogy is enjoined preliminarily and permanently by this Court from continuing its infringement.

## ATTORNEYS' FEES

57. Pursuant to 35 U.S.C. § 285, EnerCorp requests that this Court find this case to be an exceptional case and award EnerCorp its reasonable attorneys' fees.

## JURY DEMAND

58. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, EnerCorp respectfully requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

59. WHEREFORE, EnerCorp respectfully requests that the Court issue citation for Trilogy to appear and answer and further requests the following relief:

    a. Final Judgment finding that Trilogy has willfully directly infringed one or more of the claims of the '883 Patent under 35 U.S.C. § 271(a);

    b. Final Judgment finding that Trilogy has willfully and directly infringed one or more of the claims of the '160 Patent under 35 U.S.C. § 271(a);

c. Final Judgment finding that Trilogy has induced the infringement of one or more claims of the '883 Patent under 35 U.S.C. § 271(b);

d. Final Judgment finding that Trilogy has induced the infringement of one or more claims of the '160 Patent under 35 U.S.C. § 271(b);

e. Issuance of a preliminary and permanent injunction pursuant to 35 U.S.C. § 283 against the continuing infringement of the claims of the '883 Patent and the claims of the '160 Patent by Trilogy, its officers, agents, employees, attorneys, representatives, and all others acting in concert therewith;

f. Court order an accounting of all monies received by or on behalf of Trilogy and all damages sustained by EnerCorp as a result of Trilogy's infringements, that such monies and damages be awarded to EnerCorp, and that interest and costs be assessed against Trilogy pursuant to 35 U.S.C. § 284;

g. Court finds that this is an exceptional case and order that Trilogy pay EnerCorp's reasonable attorneys' fees and costs, pursuant to 35 U.S.C. §285; and

h. that the Court award such further and other relief to EnerCorp as the Court deems just, together with its costs and disbursements in this action.

Date: October 3, 2025

Respectfully Submitted,

MITBY PACHOLDER JOHNSON, PLLC

*/s/ Steven J. Mitby*
Steven J. Mitby
Texas Bar No. 24037123
smitby@mitbylaw.com
Timothy W. Johnson
Texas Bar No. 24002366
tjohnson@mitbylaw.com
Michael K. Barnhart
Texas Bar No. 24040472
mbarnhart@mitbylaw.com
1001 McKinney, Suite 925
Houston, Texas 77002
Telephone: (713) 234-1446